```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

EDWARD LIND,

    Plaintiff,

v.                        Case No: 2:16-cv-3-FtM-29MRM

DIRECTOR, FLORIDA CIVIL COMMITMENT CENTER, sue in official capacity,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court upon the following:

    Defendant Director, Florida Civil Commitment Center's ("Defendant Director's" or "Defendant's") motion for summary judgment (Doc. 1, filed January 9, 2017);

    Plaintiff Edward Lind's ("Plaintiff's") motion for summary judgment (Doc. 33, filed January 9, 2017);

    Defendant Director's amended motion for summary judgment (Doc. 34, filed January 10, 2017);

    Defendant Director's response in opposition to Plaintiff's motion for summary judgment (Doc. 36, filed February 15, 2017);

    Plaintiff Edward Lind's second motion for summary judgment, construed as a response in opposition to Defendant's motion for summary judgment (Doc. 37, filed February 16, 2017); and

    Defendant Director's response in opposition to Plaintiff's second motion for summary judgment (Doc. 39, filed March 21, 2017).

For the reasons given in this Opinion and Order, Defendant Director's motions for summary judgment are granted. Plaintiff's motions for summary judgment are denied, and judgment will be entered in favor of defendant.

I. **Background and Procedural History**

Plaintiff, an involuntarily civilly committed resident of the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida,[1] initiated this action on January 4, 2016 by filing a complaint pursuant to 42 U.S.C. § 1983 against the Director of the Florida Civil Commitment Center (Doc. 1). Plaintiff's original complaint is the operative complaint before the Court.

On April 29, 2016, Defendant Director filed a motion to dismiss, arguing that Plaintiff's complaint was moot because he (Plaintiff) had received the only relief requested in the complaint (Doc. 11).[2] In response, Plaintiff agreed that he had received

---

[1] Florida's Involuntary Civil Commitment for Sexually Violent Predators Act was enacted in Florida "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Fla. Stat. § 394.910, et seq. A person who is found, after a hearing, to be a "sexually violent predator" is "committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. at § 394.917.

[2] Defendant Director also argued that Plaintiff had sued the incorrect defendant because the director of the FCCC could not be held liable for monetary damages under a theory of respondeat superior (Doc. 11 at 5). However Defendant later withdrew his challenge to the propriety of naming the FCCC director as a

surgery for his groin hernia, but had not yet received surgery to correct his abdominal hernia (Doc. 22).

Defendant Director filed an answer and affirmative defenses to the complaint (Doc. 25), and on September 21, 2016, the parties were directed to conduct discovery (Doc. 26). Thereafter, both parties filed motions for summary judgment on September 9, 2017 and attached documents in support of their motions (Doc. 29; Doc. 33). The following day, Defendant Director filed an amended motion for summary judgment (Doc. 34). The parties were directed to respond to the motions (Doc. 35). The parties were cautioned that: (1) failure to respond to a motion for summary judgment indicates that the motion is unopposed; (2) all material facts asserted in the motions would be considered admitted unless controverted by proper evidentiary materials; and (3) Plaintiff could not rely solely on the allegations of his pleadings to oppose the motions (Doc. 35) (citing Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)). Despite the warnings, Plaintiff did not respond to Defendant Director's motions for summary judgment. However, the Court will liberally construe Plaintiff's second motion for summary judgment as his response to Defendant Director's motions. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent

---

defendant since Plaintiff sought only injunctive relief in his complaint (Doc. 20).

standard than pleadings drafter by attorneys and will, therefore, be liberally construed.").

## II. <u>Pleadings</u>

### Complaint

In his complaint, Plaintiff alleges that he suffers from one abdominal and one groin hernia (Doc. 1 at ¶ 4). The hernias cause him great pain. <u>Id.</u> at ¶ 5. He has sought surgery from medical professionals at the FCCC, but they refuse to provide surgery. <u>Id.</u> at ¶¶ 6-7. Plaintiff asserts that the defendant's deliberate indifference to his medical need violates his constitutional rights under the Due Process Clause of the Fourteenth Amendment. <u>Id.</u> at ¶ 8.

Plaintiff seeks only an order from this Court compelling Defendant Director to provide hernia surgery (Doc. 1 at ¶ 9).

### Defendant Director's Motion for Summary Judgment

In his motion for summary judgment, Defendant Director alleges that Plaintiff has received ample care for his hernias and that his § 1983 complaint is based merely upon Plaintiff's disagreement with the treatment provided (Doc. 34). Defendant asserts that the proper treatment for a hernia is a "classic" example of a matter for medical judgment and that "[n]o constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment." <u>Id.</u> at 11.

To support his motion for summary judgment, Defendant Director attaches Plaintiff's medical records (Doc. 34-1; Doc. 34-2); an affidavit of Jacques Lamour, M.D. (Doc. 34-3, "Lamour Aff."); and an affidavit from Donald Sawyer (Doc. 34-4, "Sawyer Aff.").

In Plaintiff's construed response to Defendant's motion for summary judgment, Plaintiff urges that the responses to the grievances he filed regarding his hernia treatment were "frivolous" because they merely advised him to speak with the medical department, which presumably, was not providing the treatment Plaintiff desired (Doc. 37 at 1). Plaintiff urges, for the first time in this response, that nothing has been done about his hemorrhoid problem; that he is seeking pain relief; and that he is now seeking monetary damages for pain and suffering and mental anguish. Id. at ¶¶ 5-9.[3]

---

[3] It is well-settled that a plaintiff cannot argue a new theory of relief for the first time in response to a motion for summary judgment. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")(citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)); Cruz v. Advance Stores Co., Inc., 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) ("[A] party may not raise a new theory for the first time in response to a summary judgment motion."). Accordingly, the Court will not address Plaintiff's new arguments that Defendant Director has not adequately treated his hemorrhoids or that he is entitled to monetary damages. Moreover, as argued by Defendant Director in his original motion to dismiss (Doc. 11), unless Defendant Director was personally involved in denying Plaintiff proper medical care or encouraged a policy of denying medical treatment for hernia issues (and there are no

In support, Plaintiff attaches numerous grievances relating to Plaintiff's hernias and hemorrhoids, and a printout from an unidentified source defining "hernia" and suggesting that surgery is an appropriate treatment (Doc. 37-2).

**Plaintiff's Motion for Summary Judgment**

In his motion for summary judgment, Plaintiff asserts that, although he received surgery on his groin hernia after this suit was filed, he still suffers from an abdominal hernia (Doc. 33 at ¶ 10). He asserts that his hernia first appeared in 2010, but that Dr. Lamour has done nothing to fix the problem, despite numerous grievances filed. Id. at ¶¶ 1-8. In support of his motion, Plaintiff attaches copies of seven grievances he has filed with the administration of the FCCC regarding his hernias (Doc. 33-1; Doc. 33-2; Doc. 33-3; Doc. 33-4; Doc. 33-5).

In response to Plaintiff's motion for summary judgment, Defendant Director references the arguments and evidence filed in his own motion for summary judgment (Doc. 36). Defendant urges that Plaintiff's complaints and medical issues were not ignored; rather, Plaintiff merely did not receive the precise treatment he wanted. Id.

---

allegations that this is the case), he cannot be held liable for monetary damages under 42 U.S.C. § 1983. See Matthews v. Crosby, F.3d 1265, 1270 (11th Cir. 2007).

## III. Standards of Review

### Summary Judgment Standard

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other

relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, (1986).

**Deliberate Indifference Standard**[4]

Deliberate indifference to the serious medical needs of a prisoner "constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); see also Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff

---

[4] Plaintiff is not a prisoner. Therefore, his 42 U.S.C. § 1983 claims rest upon his contention that the defendants violated his rights under the due process clause of the Fourteenth Amendment as set forth in Youngberg v. Romeo, 457 U.S. 307 (1982), rather than on the Eighth Amendment's "cruel and unusual" clause. Under Youngberg, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. at 322. The Eleventh Circuit has held that Youngberg establishes that the due process rights of the involuntarily civilly committed are "at least as extensive" as the Eighth Amendment "rights of the criminally institutionalized," and therefore, "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996).

must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

"[A] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow, 320 F.3d at 1243 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)). In either situation, "the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citing Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (alteration in original); see also Andujar v. Rodriquez, 486 F.3d 1199, 1203 (11th Cir. 2007) (finding that a condition involving more than "superficial" wounds, affecting ability to walk, and pain that caused crying was objectively, sufficiently serious).

In order to establish deliberate indifference to a serious medical need on the part of a defendant, a plaintiff must show subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than gross negligence. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010).

## IV. Analysis

Based upon the pleadings and the evidence before this Court, the following facts regarding Plaintiff's hernia treatments are undisputed:

> Plaintiff filed three sick call requests in 2012 regarding his hernias (Doc. 37-2 at 3-5). Plaintiff was examined by non-defendant Dr. Lamour, but the issue was not resolved (Doc. 33 at ¶ 7).
>
> On August 10, 2015 Plaintiff was examined by non-defendant Nurse Aikman for inguinal pain and back pain (Doc. 34-1 at 69-70; Lamour Aff. at ¶ 5). Plaintiff was provided a hernia belt, and advised to stop lifting weights. Id.
>
> He was examined again on August 28, 2015. Plaintiff told the nurse that he refused to wear the hernia belt because it was not holding the hernia in place. At the time, the hernia was easily reducible (Doc. 34-1 at 78; Lamour Aff. at ¶ 7-8).
>
> Dr. Lamour examined Plaintiff on October 8, 2015 for an issue unrelated to the hernia. Plaintiff again requested hernia surgery, but Dr. Lamour determined that there was no indication for hernia surgery because the hernia was still reducible (Doc. 34-1 at 63; Lamour Aff. at ¶ 11-12).
>
> On November 11, 2015, Plaintiff requested hernia surgery and narcotic pain medication (Doc. 34-2 at 19; Lamour Aff. at ¶ 16). Plaintiff has been receiving Motrin for pain relief since at least 2014. Id. at ¶ 45.
>
> On November 20, 2015, Plaintiff saw Dr. Lamour for follow-up care related to a colonoscopy and again requested hernia surgery. Dr. Lamour determined that Plaintiff's hernia was still easily reducible at this time (Doc. 34-1 at 61; Ex. B at ¶ 18). Thereafter, Dr.

Lamour discussed Plaintiff's hernia with Dr. Kennedy, the corporate physician, and they decided to continue monitoring Plaintiff's hernia to ensure that it remained reducible (Lamour Aff. at ¶ 19).
On December 15, 2015, Plaintiff requested hernia surgery via sick call, and Dr. Lamour determined that Plaintiff's left inguinal hernia was no longer easily reducible (Doc. 34-1 at 55; Doc. 34-2 at 18; Lamour Aff. at ¶¶ 20-21). Thereafter, Dr. Kennedy approved an outside consultation with a surgeon (Doc. 34-2 at 40; Lamour Aff. at ¶ 22).

On February 17, 2016, Plaintiff was examined by the surgeon who recommended surgery due to the fact that Plaintiff's inguinal hernia was reducible, but not easily reducible, at the time. The surgeon did not consider it an emergency (Doc. 34-1 at 13-15; Lamour Aff. at ¶ 23). Dr. Lamour approved the surgery which was scheduled for April 7, 2016. Lamour Aff. at ¶ 24.

On April 7, 2016, Plaintiff received surgery on his inguinal surgery (Doc. 34-1 at 41-51; Lamour Aff. at 25-27).

On May 12, 2016, Plaintiff completed a sick call request regarding an umbilical hernia (Doc. 34-2 at 10; Lamour Aff. at ¶ 33).

On May 18, 2016, Plaintiff was examined, and Dr. Lamour determined that the umbilical hernia was very small and easily reducible. Lamour Aff. at ¶¶ 34-36.

Plaintiff has not sought treatment for his umbilical hernia since May 18, 2016. Lamour Aff. at ¶ 39.

Even assuming that Plaintiff has demonstrated a serious medical need under the first element of a deliberate indifference claim, given the undisputed evidence before this Court, no reasonable person could find that the medical care afforded

Plaintiff at the FCCC rises to the level of deliberate indifference. The care provided to Plaintiff is similar to that provided the plaintiff in Palazon v. Sec'y, Fla. Dep't of Corr., 361 F. App'x 99 (11th Cir. 2010), where the Eleventh Circuit affirmed a grant of summary judgment against a prisoner who claimed that the prison's delay in performing surgery on his inguinal hernia constituted deliberate indifference because the delay caused him greater pain than necessary. Id. at 89. Instead of receiving surgery, the plaintiff received a hernia truss, pain medication, and a wheelchair to help him move around. Id. Specifically, the "doctors did not want to operate on the hernia as long as it remained reducible." Id. The Eleventh Circuit reasoned that the care the plaintiff received was not so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. Id.

Based on his experience and training, Dr. Lamour believed there was no surgical urgency in Plaintiff's case as long as the hernia remained easily reducible (Lamour Aff. at ¶ 9). Dr. Lamour also believed that surgery involved a number of risks. Id. Plaintiff received surgery on his inguinal hernia soon after Dr. Lamour determined that it was no longer easily reducible. To that point, Plaintiff received care in the form of a hernia belt, pain medication, and activity limitation. Likewise, Plaintiff's small easily reducible umbilical hernia is currently being monitored,

and Plaintiff has been advised that he should return to the medical department if he has issues related to the umbilical hernia.

Although Plaintiff clearly prefers different treatment than he is currently receiving, he does not state a deliberate indifference claim. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."). That Plaintiff prefers surgery on his umbilical hernia is merely a disagreement with the care he is receiving.

In an attempt to prove that surgery is required to treat his umbilical hernia, Plaintiff appears to rely on an unidentified printout, presumably photocopied from a medical manual, which states that "[s]urgery is often necessary for the permanent relief of reducible hernia, and it is the only safe treatment for more advanced forms." (Doc. 37-2 at 7). The document is not signed by a doctor and appears to contain mere boilerplate language because it notes that "[a] hernia may be present at birth as the result of defective development of the abdominal wall, or it may occur later in life as the result of an injury." Id. Even if this document

is an admissible piece of evidence, which it is not[5], it merely offers a generic opinion about customary hernia treatment options without any consideration of the Eighth or Fourteenth Amendments or Plaintiff's specific medical condition. In fact, the document actually refutes Plaintiff's claim because it says only that surgery is "often" necessary for a reducible hernia, not definitely required. Thus, this document does not rebut the undisputed medical opinion of Dr. Lamour that Plaintiff's remaining umbilical hernia is small and easily reducible, the current course of treatment (monitoring) is sufficient, and surgery is not medically necessary. Because the undisputed facts in this case show that surgery is merely elective given the minimal nature of Plaintiff's remaining hernia, Plaintiff does not raise a genuine issue of material fact as to his claim of deliberate indifference, and Defendant Director is entitled to summary judgment.

Moreover, in support of his own motion for summary judgment (Doc. 33), Plaintiff offers only assertions that he has sought different treatment from Dr. Lamour than has been offered at the FCCC for his hernias. As discussed, mere disagreement with the care provided does not state a deliberate indifference claim, and Plaintiff is not entitled to summary judgment.

---

[5] See Fed. R. Civ. P. 56(e); Fed. R. Evid. 801, 803, 804; Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.").

## V. Conclusion

1. For the reasons given above, Defendant's motions for summary judgment (Doc. 29; Doc. 34) are **GRANTED**.

2. Plaintiff's motions for summary judgment (Doc. 33; Doc. 37) are **DENIED**.

3. The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment in favor of the defendant.

**DONE** and **ORDERED** in Fort Myers, Florida on this __16th__ day of May, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record